```
                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF NEW JERSEY

IN RE:                          .  Case No. 11-17370(MS)
                                .
JUSTO G. LONDONO and            .
BARBARA M. LONDONO,             .
                                .
        Debtors.                .
. . . . . . . . . . . . . . .   . .
FIA CARD SERVICES, N.A.         .  Adv. No. 11-01770(MS)
f.k.a. MBNA AMERICA             .
BANK, N.A.,                     .
                                .
        Plaintiff,              .
                                .
    v.                          .
                                .  M.L.K. Federal Building
BARBARA LONDONO,                .  50 Walnut Street, 3rd Floor
                                .  Newark, NJ 07102
        Defendant.              .
                                .  October 11, 2011
. . . . . . . . . . . . . . .   .  12:33 p.m.
```

                    TRANSCRIPT OF HEARING
              BEFORE HONORABLE MORRIS STERN
           UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For FIA Card              Weinstein & Riley
Services, N.A.:           By: KENNETH S. JANNETTE, ESQ.
                          14 Penn Plaza, Suite 1300
                          New York, NY  10122

For Barbara M.            Fitzgerald & Associates
Londono:                  By: LAUREN YASSINE, ESQ.
                          649 Newark Avenue
                          Jersey City, NJ  07306


Audio Operator:           Mariela Primo

Proceedings recorded by electronic sound recording, transcript
           produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail: jjcourt@jjcourt.com

(609) 586-2311    Fax No. (609) 587-3599

1          (Technical problem - Audio begins as follows)
2          THE COURT:  ...what they paid with that $11,000, even
3   if every penny of it went for shelter to the mortgage holder,
4   even if every penny went there, and there's evidence that --
5   because it's a mixed fund, $11,000 going into a bank account
6   and they had to buy food and pay for other necessaries, but
7   even if every penny went, they still had a big hole between the
8   debt on that mortgage and the value of the house.
9          And the value of the house kept ebbing, so they
10  didn't -- all they bought was shelter.  They didn't increase
11  their equity in the sense that there was no equity.  It was
12  just shelter.  It was just a necessary expense, and so I, you
13  know, I give you credit for trying to develop an argument on
14  trading dollars and some kind of conspiracy, but it doesn't fit
15  this case.
16          I think that your complaint and your defense to the
17  summary judgment are put forth in good faith.  I don't question
18  that.  But, I don't think that either the complaint or your
19  current position in the papers has legs.  I think that, again,
20  all the objective factors are on the plaintiff's -- I'm sorry,
21  on the moving party defendant debtor side.
22          We have an account opened in December of '08.  We
23  have an 8/27/10 cash advance of 11,000 -- I think it's $11,100.
24  Somehow, this amount of the advance was almost twice what the
25  request was.  I don't know what happened there.  But --

1   MR. JANNETTE:  I don't know either.
2   THE COURT:  -- and it's not particularly relevant,
3 except that it sort of boggled my mind for a moment.  The --
4 there were efforts to sell this house before August of 2010,
5 and the husband retired from work at, not a young age, you
6 know, I think he was 68 or older, on retirement some time in
7 September of 2010.
8   They paid their credit card up until December.  I
9 think the last payment was December 8th.  The last charge was
10 December 27th.  The first consultation with bankruptcy counsel
11 was in January, and they didn't file until 3/21/11.  And, I
12 think it's just not a case where the credit card company can
13 make out an intent to defraud.  And so, I'm going to grant the
14 summary judgment motion.  I'm going to deny the application for
15 fees or sanctions.  As I say, I think it's a good faith
16 pleading and a good faith defense to the motion.
17   But, summary judgment is granted and I think we have
18 a form of order --
19   MS. YASSINE:  Your Honor, I put forth the form of
20 order, including our fees.  Again, I would ask you just to lay
21 out why you do not believe fees are appropriate in this case.
22   THE COURT:  I thought --
23   MS. YASSINE:  Counsel's done nothing prior to filing
24 the case, and, unfortunately, my office was put through a lot
25 of work for which we were not paid.

1    MR. JANNETTE: That's not correct.

2    MS. YASSINE: And my clients --

3    MR. JANNETTE: That is not correct.

4    THE COURT: I'll hear you on your defense to the
5  attorney's fees.

6    MR. JANNETTE: Your Honor, I did in fact send
7  correspondence before the case was filed, and the response to
8  that correspondence was actually a letter from Mr. Fitzgerald
9  with a settlement offer. So, I would -- had no notice
10 whatsoever that they were taking this hard -- rather hard-lined
11 position until I was served with the motion.

12   If somebody would have picked up the phone and called
13 me, it's always my position that I'm open to then getting on
14 the phone with my client and saying, listen, I have someone
15 who's fired up on the phone, they think they have a very good
16 case here, we need to sit down and talk about it. It's always
17 been my position to do that. I did not receive that phone
18 call.

19   MS. YASSINE: Your Honor, if I can just respond, our
20 initial response when we got his first letter was to offer a
21 settlement, simply because my clients did not want to be
22 dragged through this process. We responded immediately with
23 offer of settlement, a certification, an offer of subsequent
24 documents, bank statements. We heard nothing. And then, this
25 adversary was filed.

1          At that point, we had to make a decision and my
2  clients had to make a decision.  They don't have the means to
3  pay for counsel on this.  But, having reviewed all of the
4  records, having spent the time at that point, we decided to
5  take this on without charge because this action never should
6  have been brought.
7          Mr. Jannette did not appear at the creditor's
8  meeting, did not conduct a 2004 hearing, did not even review
9  his own internal --
10         MR. JANNETTE:  I requested one.
11         THE COURT:  Go ahead.
12         MR. JANNETTE:  I did request a 2004, no one appeared,
13 and no one called me to reschedule it.
14         MS. YASSINE:  First --
15         MR. JANNETTE:  And I have documentary evidence to
16 support that.
17         MS. YASSINE:  We received a request, but it was
18 procedurally improper.  It was filed in the wrong court.
19 Second --
20         MR. JANNETTE:  I didn't get an objection either.
21         MS. YASSINE:  Second, Mr. Jannette certifies under
22 oath that it was sent to my clients, which it was not.  We did
23 call his office and state that we were unable to attend that
24 hearing date and also mentioned that it was procedurally
25 improper.  Again, we received no response at our end.

6

1      THE COURT:  Well, we have sort of a 'tis-'taint now
2 between counsel, and you're asking me for fees.  I've already
3 indicated that I believe that there were some bases for the
4 filing of the complaint.  I also agree that they couldn't pull
5 off the action to get past your dispositive motion, but that
6 doesn't mean that they didn't have where someone borrowed
7 $11,000 six months before or five months before consulting
8 bankruptcy counsel, which is really the fact, and a statement
9 in their petition saying they intended to keep the house, as
10 opposed to their efforts to sell it before August of 2010.
11      So, there were some sparks in there that weren't
12 necessarily all debtor positive.  Having said that, I don't
13 think that they could have pulled off a proof in the face of
14 the objective factors that you properly marshaled, that there
15 was an intent to defraud.  But, that's a very different issue
16 than whether somebody who advances $11,000 in August of 2010 to
17 people who then seek bankruptcy counsel in January, even though
18 they didn't file until March, and there are then these
19 discussions or efforts pre-adversary complaint filing.
20      It seem to me that, though it's unfortunate that the
21 debtor has to either pay this money or counsel has to do it as
22 a matter of charity, but I don't think that it's appropriate
23 for a Court under those circumstances to then add on to the
24 expense that the credit card company has already encountered.
25 Whether there's fees or not on that end, I don't know, but

1  they've lost the $11,000, an unhappy event.
2          To say that their effort to collect, which I don't
3  view as a bad faith effort, and I've had counsel before me in
4  other cases and, you know, not that prior cases necessarily
5  define the turf, but I think that from counsel's perspective,
6  that is, the plaintiff's perspective and counsel, in
7  particular, there is always an effort to settle a case.
8          This case may have been weaker than others, but I
9  think that for me to weigh on counsel and wag my finger and
10 say, you're a bad faith operator, which I'd have to say, is
11 really unfair and won't bode well in the next case, and the
12 next case, and the next case.  So, I think --
13         MS. YASSINE:  Well, Your Honor --
14         THE COURT:  -- I'm not going to, in essence,
15 discipline counsel for his zealous representation of his client
16 where there are sparks.
17         MS. YASSINE:  Your Honor, I agree that there were
18 sparks and I agree that there was an overture for settlement.
19 The problem in these cases and the reason so many settle is
20 that debtors never have the resources to fight back.  To call
21 him up and say, let's settle, means money is spent from my
22 client in these payments --
23         MR. JANNETTE:  I find quite a few people fighting
24 back, Your Honor, I disagree with that one.
25         THE COURT:  Wait, let her finish please.

1        MS. YASSINE:  It means that they've got to either pay
2   out of pocket or retain counsel, which they cannot afford to
3   do.  It puts a chill on the ability to fight these actions,
4   because, frankly, Your Honor, the amount of time spent on this
5   action means I can't take on more than one without payment.
6        MR. JANNETTE:  Or he could just pick up the phone and
7   call me.
8        THE COURT:  I'm not unsympathetic to that, and if I
9   had someone before me who filed an adversary complaint on a
10  sort of a hell or high water basis, you know, automatically
11  knee jerk, file it, and put the -- put debtors, generally, at
12  the expense of defending, you know, something that is
13  borderline an RPC violation, if not over the line, and
14  certainly not a principled approach to litigation if we look at
15  the Appendix R, for example, in the local rules, and we're
16  coming up close to a seminar on professionalism the 18th of
17  this month and there, you know, it sort of comes right out.
18       But, we don't have that.  That's not my experience,
19  and I don't know if it's your experience with counsel.  And, in
20  this case there was discussion.  Now, maybe the communication
21  fell apart and it may be, you know, if we want to say there's
22  fault, there may be a little fault in each quarter.
23       But, I don't think in this case, maybe the next case,
24  maybe with different counsel, maybe with this counsel, I think
25  both sides can improve the pre-filing discussion.  And, counsel

1  is discomforted by being here.  You wanted to appear by
2  telephone, I wouldn't allow it, and you can interpret that any
3  way you want, but I thought this speech ought to be heard in
4  person and I thought you ought to be put to the test on your
5  defense, and it didn't work.  But, that doesn't mean that it
6  was non-meritorious in the sense that it should generate fees.
7         I think your argument's very good.  You did a good
8  job on behalf of your client.  Poor people are unfortunately
9  that.  That's -- and I don't know what else to say.  But, I
10 don't think that that automatically generates a penalty, and it
11 didn't in this case.  But, again, maybe the next case.  You did
12 a good job.  All right, thank you.
13        MS. YASSINE:  Thank you, Your Honor.
14        THE COURT:  Summary -- I've modified the form of
15 order so it will be signed in hard copy.  Summary judgment is
16 granted, but the application for counsel fees by the defendant
17 moving party is denied.

* * * * *

# **C E R T I F I C A T I O N**

      I, WENDY ANTOSIEWICZ, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

/s/ Wendy Antosiewicz

WENDY ANTOSIEWICZ

J&J COURT TRANSCRIBERS, INC.   DATE:  October 26, 2011